```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
```
**MICHAEL DOMENECH and**
**KADIJA WILLIAMS,**

        Plaintiffs,        07 Civ.3146

   -against-              **COMPLAINT**

                                     **JURY DEMAND**

**TBWA\CHIAT\DAY,**

        Defendant.
```
--------------------------------X
```

    Plaintiffs, MICHAEL DOMENECH and KADIJA WILLIAMS, by their attorneys, Mauro & Guzzardo, LLP, as and for their Complaint, respectively allege as follows:

## I. JURISDICTION

    1. Jurisdiction as to the First and Second Causes of Action herein, arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e *et seq.*, ("Title VII") is conferred upon this Court by Sec. 2000e-5(f) thereof; declaratory relief is authorized by 28 U.S.C. Secs. 2201 and 2202. Jurisdiction as to the Third and Fourth Causes of Action herein is conferred upon this Court by 42 U.S.C. Section 1981. Jurisdiction as to the Fifth and Sixth Causes of Action, arising under the New York City Human Rights Law ("HRL"), § 8-107.1(a) and 8-502 thereof, is conferred upon this Court by and under the principles of supplemental jurisdiction, as set forth in 28 U.S.C. Sec. 1367. a COPY OF THIS Complaint is being served upon the New York City Law Department and the New York City Commission on Human Rights.

## II. **PARTIES**

2.  Defendant, TBWA\CHIAT\DAY ("CHIAT\DAY" or "Defendant"), is, upon information and belief, a foreign corporation, authorized to conduct business within the state of New York with offices at 488 Madison Avenue, New York, New York. CHIAT\DAY is an "employer" within the meaning of both the Title VII and the HRL. Venue is properly laid in the Southern District of New York in that Defendant has locations within said venue and the causes of action arose therein.

3.  Plaintiff, Michael Domenech ("Domenech"), is a Hispanic male of Puerto Rican National Origin.

4.  Plaintiff, Kadija Williams ("Williams"), is a Black female of African American and Caribbean descent.

## III. **ADMINISTRATIVE PROCEDURES**

5.  On or about December 12, 2006 within the time prescribed by the Title VII, Plaintiffs each duly filed with the Equal Employment Opportunity Commission ("EEOC") a charge of race and national origin discrimination against CHIAT\DAY.

6.  In substance, the EEOC charges claimed, <u>inter alia</u>, that CHIAT\DAY had engaged in discrimination against Plaintiffs by, <u>inter alia</u>, creating, condoning and fostering a hostile work environment on account of race and/or national origin. The charge for Michael Domenech also claimed that CHIAT\DAY has failed to promote Mr. Domenech on account of his race and/or national origin.

7.   On or about January 22, 2007 the EEOC issued to each Plaintiff a "Notice of Right to Sue" letter (exhibit "A" hereto). This suit has been timely commenced within ninety (90) days from the date of receipt thereof.

### IV.   STATEMENT OF THE CLAIM

PLAINTIFFS' CLAIMS OF RACIALLY HOSTILE WORK ENVIRONMENT

8. Since July 2003, the Plaintiff Domenech has been employed by CHIAT\DAY as, *inter alia*, an Operator in the Production Department.

9.   Since April 2004, Plaintiff, Williams has been employed by CHIAT\DAY as, *inter alia*, a Senior Graphic Designer in the Production Department.

10.  At all times herein pertinent, Plaintiffs' work performances have been satisfactory.

11.  At all times herein pertinent, Plaintiffs' supervisors in the Production Department have been, Eric Layne, Debra Loncar, Russell Sharpe, Micheal Frandy and Guy Gola.  All of the aforementioned supervisors are Caucasian.

12.  From April 2004, Plaintiffs have experienced a hostile work environment on account of their race and/or national origin.

13.  The work environment in the Production Department has been, and remains, polluted with rarcial jokes, stereotyping and favoritism of Caucasian workers.  The racially offensive conduct

consists of, but is not limited to the following:

    a. The manager, Eric Layne, named the office goldfish after actors from the sitcom Different Strokes: the black goldfish were named after the black actors and the orange goldfish were named after the white actors;

    b. Mr. Layne would repeatedly play racially stereotypical sound bytes from *Crank Yankers* over speakers in the office during work hours;

    c. Russell Sharpe referred to Plaintiff Michael Domenech, as "Cheech" as in Cheech & Chong;

    d. Mr. Sammy An, Mr. Layne's immediate supervisor, asked a Black employee why Black people name their kids such "funny names";

    e. Minority co-workers are referred to as "lazy" or having "disappeared" while white co-workers are referred to as "tired" or "out for a smoke";

    f. Management displays throughout the office *South Park* style racially charged and offensive caricatures of employees for the entire month of their birthday;

    g. When a Black male co-worker was seeking a work assignment, Guy Gola took out his car keys and said, "You're up? You're up? Here go get my car washed";

    h. Mr. Layne and other Caucasian co-workers use the term "ghetto" when referring to something bad, negative or dysfunctional;

4

    i.    Mr. Layne would use stereotypical black urban slang when speaking to, or emailing, a black employee;

    j.    Mr. Layne and Debra Loncar nicknamed a South Asian employee "Squeegee" and Mr. Layne, Ms. Loncar and Mr. Gola would mimic his accent when speaking about or to him; making comments like "Welcome to 7-Eleven, thank you come again" taken from a racially offensive South Asian character on the *Simpsons*;

    k.    Mr. Robert Breyer, manager, referred to Plaintiff Williams as "Clara" when she refused to go to the kitchen to get drinks for the studio. "Clara" is a reference for a West Indian nanny/housekeeper; and

    l.    Assistant Manager, Miachel Frandy, stated to Plaintiff Domenech that he "hates Mexicans" because they "only benefit themselves…robbing this country of a healthy economy by stealing all the jobs for less than minimum wage";

14. Said racially offensive work environment, which was promulgated by management, culminated in an offensive and threatening incident. On or about June 8, 2006, a Caucasian co-worker of the Plaintiffs, Teresa Celemin, hung up a sign advertising a pending "COON HUNT" at the entrance of Plaintiffs' shared cubicle and behind the head of Plaintiff Domenech.

15. The "COON HUNT" sign was visible for the entire office to see upon entering the studio. The Studio Director, George

Ashbrook, looked directly at the sign in front of the employees while an employee, Christian Meija, read the sign aloud to the entire office.  Thereafter, and in front of Mr. Ashbrook, Mr. Meija asked Ms. Celemin why she hung up the sign.  Ms. Celemin responded, "isn't that funny."  Mr. Ashbrook did not ask that the sign be removed, and in fact, made no statement about it whatsoever.

    16.   Shortly after June 8, 2006, Plaintiff Williams, asked Ms. Celemin if she understood that the connotation of the sign "COON HUNT".  Plaintiff Williams explained to Ms. Celemin that the term "COON HUNT" was a reference to the masking of killing Blacks in the South.  Ms. Celemin responded that she knew exactly what it meant.  Plaintiff Williams asked her to remove the sign.  Ms. Celemin grabbed the sign from the wall, shoved it into her purse, and turned abruptly away from Plaintiff Williams.

    17.   On or about June 16, 2006, Plaintiff Williams made a complaint to Blanca Stevens, Director of Human Resources, about the "COON HUNT" sign, management's refusal to even ask Ms. Celemin to have it removed and the environment in the company that encouraged the hanging of such a sign.  Plaintiff Williams also explained that Ms. Celemin had informed her that she knew exactly what the sign meant and how Ms. Celemin had acted in a hostile manner when she asked her to remove it.  Ms. Stevens said she would look into her complaints.

    18.    However, thereafter, Ms. Celemin was listed on the organizational chart of the department as senior to Plaintiff

Williams, although Plaintiff Williams' title was above hers. Plaintiff Williams was also asked to report to her.

19. In or about June 2006, Plaintiff Domenech also complained to Blanca Stevens about the above described racially hostile work environment. Ms. Stevens stated that, she believed that the "COON HUNT" sign had been removed. Ms. Stevens did not address Plaintiff Domenech's other complaints.

20. Since June 2006, after the complaints of the Plaintiffs about the racially and ethnically hostile work environment, Defendant issued "sensitivity training". However, during the course of the training, managers and co-works mocked the training, speaking to each other in exaggerated Asian or Hispanic accents, grabbing each other and asking, "is this harassment" and laughing.

21. Further, since the June 2006 complaints, Plaintiff Williams' title has been changed from Senior Graphic Artist to Graphic Artist, a demotion.

22. Both Plaintiffs remain ostracized by their co-workers and managers.

23. As a result of the racially offensive work environment, Plaintiffs have suffered mental anguish and distress.

### PLAINTIFF DOMENECH'S FAILURE TO PROMOTE CLAIM

24. In or about March 2004, Plaintiff informed Frank Paterno and Eric Layne that he would like to be considered for the Studio Manager position. Despite the fact that Plaintiff was

7

qualified for the position, he was not even afforded an interview.  A Caucasian male was hired for the position.

25.  In or mid-2004, the position of Senior Graphic Artist became open.  Plaintiff informed management that he would like to be considered for said position.  Despite the fact that he was qualified for the position, Plaintiff Domenech was not even afforded an interview.  A Caucasian male was hired for the position.

26.  In or about early 2004, Plaintiff Domenech was appointed interim Lead Graphic Artist.  Plaintiff Domenech informed management that he would like to be permanently placed in the position.  However, again, despite that fact that he was qualified and had been operating as the Lead Graphic Artist, Plaintiff was not even afforded an interview.  A Caucasian male was hired for the position.

27.  Thereafter, approximately two (2) other lateral positions became open.  Plaintiff expressed his desire to be considered for each position, however, again he was never considered.  In both instances, Caucasian males were hired.

28.  Further, for two years Plaintiff did not receive any salary increase, while, upon information and belief, his Caucasian co-workers had received increases.

29.  Also, since 2004, the majority of Plaintiff's Caucasian co-workers who have hire dates after his have been promoted above him.

30.  As a result of CHIAT\DAY'S failure to promote Plaintiff

Domenech on account of his race and or national origin, Plaintiff Domenech has lost substantial wages and earnings and has suffered mental anguish and distress.

## V. FIRST CAUSE OF ACTION

31.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in Paragraphs 5 through 30 inclusive, as though set forth fully herein.

32.  CHIAT\DAY's actions in creating, condoning and fostering a hostile work environment on account of race and/or national origin were willful and in violation of rights secured to Plaintiffs by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000-e, et seq.

## VI. SECOND CAUSE OF ACTION

33.  Plaintiffs repeat, reiterate and reallege each and every allegation contained in Paragraphs 5 through 30 inclusive, as though set forth fully herein.

34.  CHIAT\DAY's failure to promote Plaintiff Domenech on account of his race and/or national origin were willful and in violation of rights secured to Plaintiff Domenech by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000-e, et seq.

## VII. THIRD CAUSE OF ACTION

35.  Plaintiffs repeat, reiterate and reallege each and every

allegation contained in Paragraphs 5 through 30 inclusive, as though set forth fully herein.

36.   CHIAT\DAY's actions in creating, condoning and fostering a hostile work environment on account of race and/or national origin were willful and in violation of rights secured to Plaintiffs by 42 U.S.C. Section 1981.

### VIII.   FOURTH CAUSE OF ACTION

37.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in Paragraphs 5 through 28 inclusive, as though set forth fully herein.

38.   CHIAT\DAY's failure to promote Plaintiff Domenech on account of his race and/or national origin were willful and in violation of rights secured to Plaintiff Domenech 42 U.S.C. Section 1981.

### IX.   FIFTH CAUSE OF ACTION

39.   Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 5 through 30 inclusive, as though set forth fully herein.

40.   CHIAT\DAY's actions in creating, condoning and fostering a hostile work environment on account of race are willful and in violation of rights secured to Plaintiff by Secs. 8-107.1(a) and 8-107.13 of the HRL.

### X.   SIXTH CAUSE OF ACTION

41.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in Paragraphs 5 through 30 inclusive, as though set forth fully herein.

42. CHIAT\DAY's failure to promote Plaintiff Domenech on account of his race and/or national origin were willful and in violation of rights secured to Plaintiff Domenech by Secs. 8-107.1(a) and 8-107.13.

## XI.   PRAYER

**WHEREFORE**, Plaintiffs ask for judgment on the First, Second Third, Fourth, Fifth and Sixth Causes of Action, seeks relief and respectfully prays that this Court grant or award the following:

    a.   A declaratory judgment, pursuant to 28 U.S.C. Sec. 2201 and 2202, determining that CHIAT\DAY's acts and practices, as set forth in the First, Third and Fifth Causes of Action herein, were in violation of Plaintiffs' rights under the Title VII and the HRL.

    b.   A money judgment award in favor of Plaintiff Domenech and against CHAIT\DAY in an amount to be determined at trial:  (i) for all out-of-pocket pecuniary losses which Plaintiff Domenech has incurred from April 1, 2004 to date of trial as a result of his being discriminated against, including back pay, lost fringe and pension benefits and for such other out-of-pocket expenses incurred and computed with interest from April 1, 2004, to the date of trial.

    c.   A money judgment award with respect to Plaintiffs' losses under § 8-120(8) and 8-502(a) of the HRL, as punitive damages, to the extent CHIAT\DAY's violations are found to have been willful and/or in reckless disregard to the rights of the

11

Plaintiffs;

    d.   A money judgment, in an amount to be determined at trial, for the mental distress anguish, pain and suffering experienced by Plaintiffs as a result of CHIAT\DAY employment practices and activities, as provided for by the HRL;

    e.   A money judgment award with respect to Plaintiff's losses under Sec. 8-120(8) and 8-502(a) of the HRL, as punitive damages, to the extent CHIAT\DAY violations are found to have been willful and/or in reckless disregard of the rights of Plaintiffs;

    f.   An allowance for the Plaintiffs' costs and disbursements incurred in the prosecution of this action, including his reasonable attorney's fees, and interest;

    g.   Retain jurisdiction over this action until CHIAT\DAT has fully complied with the orders of this Court, and require it to file such reports as the Court deems necessary to evaluate such compliance; and

    h.   Such other and further equitable and affirmative relief as to the Court may seem just and proper in the circumstances.

Dated:   Jericho, New York  
           April 17, 2007                  Yours, etc.,

                                      **MAURO & GUZZARDO, LLP**  
                                      Attorneys for Plaintiff  
                                      181 Jericho Turnpike  
                                      Suite 302  
                                      Jericho, New York 11753  
                                      (516) 333-2015

                                      By:_____  
                                        Eden Fitzgibbons Mauro  
                                          (EF-5296)

**PLEASE TAKE NOTICE** that Plaintiff herewith demands trial by jury as to all issues so triable in this action.

Dated:  Jericho, New York
        April 17, 2007

                                    By:_____
                                        Eden Fitzgibbons Mauro
                                            (EF-5296)